UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JAMES BELLAMY,

                                        Plaintiff,                    9:21-CV-0251
                                                                     (DNH/TWD)

              v.

ANTHONY ANNUCCI, Acting
Commissioner in his official and
individual capacities, DR. CARL
KOENIGSMANN, MD, Deputy
Associate Commissioner/C.M.O. in
his official and individual capacities,
E. VEDDER, Correctional Officer in
his official and individual capacities,
JON DOE, Superintendent of Great
Meadow Correctional Facility in his
official and individual capacities, GREAT
MEADOW CORRECTIONAL FACILITY,
Collectively includes medical staff and
officers in their official and individual
capacities, NP SUSAN DEVLIN-VARIN,
In her official and individual capacities,
VONDA JOHNSON, In her official and
individual capacities, and CLINTON
CORRECTIONAL FACILITY, Collectively
includes medical staff and officers in their
official and individual capacities,

                                        Defendants.

_____

APPEARANCES:

JAMES BELLAMY
17-A-2901
Plaintiff, pro se
Attica Correctional Facility
Box 149
Attica, NY 14011

DAVID N. HURD
United States District Judge

**DECISION AND ORDER**

## I. INTRODUCTION

This action was commenced on July 31, 2021, in the Western District of New York ("WDNY") by pro se plaintiff James Bellamy, a prisoner in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). Dkt. No. 1 ("Compl."). At the time plaintiff filed his complaint, he also applied to proceed in the action in forma pauperis ("IFP"). Dkt. Nos. 2, 7.

On March 3, 2021, WDNY District Judge Charles Siragusa issued a Decision and Order granting plaintiff's IFP application and reviewing the sufficiency of the complaint pursuant to 28 U.S.C. § 1915 ("Section 1915") and 28 U.S.C. § 1915A ("Section 1915A"). Dkt. No. 11 ("WDNY Order"). In relevant part, the WDNY Order severed and transferred to this District all of plaintiff's claims arising out of Clinton Correctional Facility ("Clinton C.F.") and Great Meadow Correctional Facility ("Great Meadow C.F.") because those prisons are located in this District. WDNY Order at 9-10, 15, 17. The WDNY Order did not analyze the sufficiency of the claims arising in this District, leaving that review for this Court.

Upon receipt of the transfer, the Clerk of this Court opened this action and forwarded plaintiff's complaint to the Court for review.

## II. ADDITIONAL DEFENDANTS

Plaintiff's complaint is not a model of clarity with respect to identifying the named defendants in this action. More specifically, plaintiff lists 17 defendants in the caption of the complaint, but then on pages two, three, and four, only ten defendants are listed. Compl. at 1-4. Adding to the confusion is that, on pages 32 and 33 of the complaint, plaintiff lists an

2

additional four defendants.  *Id.* at 32-33.

In its caption of this action, the WDNY Order lists the 17 defendants that are included in the complaint's caption.  WDNY Order at 1-2.  The Order, however, does not acknowledge the additional four defendants listed at the end of the complaint, nor does the caption of the action in the WDNY reflect that those four individuals are named as defendants.  As a result, when the action was transferred to this District, none of those four additional defendants were included as parties to the action.

Because three of those four individuals are relevant to the claims arising in this District at Clinton C.F. and Great Meadow C.F., the Clerk of the Court is respectfully directed to add the following individuals to the action and list them on the docket as defendants:  (1) John Serhan, Clinton C.F. audiologist; (2) Michael Washington, DOCCS Regional Medical Director and Americans With Disabilities ("ADA") Coordinator at Great Meadow C.F.; and (3) Shelley M. Mallozzi, Central Office Review Committee ("CORC").  Compl. at 33.

In addition, the Clerk is respectfully directed to update the docket to reflect that plaintiff's complaint asserts claims arising in this District against the following defendants, which were terminated by the WDNY Order: (1) DOCCS; (2) CORC; and (3) Inmate Grievance Supervisor.

## III.  DISCUSSION

### A.  Standard of Review

Section 1915(e) directs that, when a plaintiff proceeds IFP, "the court shall dismiss the case at any time if the court determines that. . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a

defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[1] Thus, even if a plaintiff satisfies the financial criteria to commence an action IFP, it is the Court's responsibility to determine whether the plaintiff may properly maintain the complaint that he filed in this District before the Court may permit him to proceed with the action IFP. *See id*.

Likewise, under 28 U.S.C. § 1915A ("Section 1915A"), a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint. . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (holding that Section 1915A applies "to all civil complaints brought by prisoners against governmental officials or entities regardless of whether the prisoner has paid the filing fee"); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (finding that both Sections 1915(e)(2)(B) and 1915A provide a basis for screening prisoner's complaints).

In reviewing a pro se litigant's complaint, the court has a duty to liberally construe the pleadings, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution . . . in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim

---

[1] A complaint is frivolous for purposes of Section 1915 when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Although the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id*. (internal quotation marks and alterations omitted).

**B.  <u>Summary of the Complaint</u>**

The following recitation of the facts is derived from plaintiff's complaint and attached exhibits, with particular focus on the claims arising out of Clinton C.F. and Great Meadow C.F. Some of the facts as alleged in the complaint are confusing and appear to be inconsistent with the exhibits attached to the complaint. The Court, however, has liberally construed the complaint and exhibits to allege the following facts, which the Court assumes are true for purposes of this Decision and Order.

5

Upon his arrival to Rikers Island Correctional Facility, plaintiff was administered a hearing test that indicated he had "serious" hearing loss.  Compl. at 5.  On or about February 22, 2017, while plaintiff at Rikers Island, he was provided a single hearing aid for his left ear.[2] *Id.* at 49-50 (Exhibit A).  On some unknown future date, plaintiff was transferred to Downstate C.F. and then re-tested by defendant DOCCS Audiologist John Serhan on August 16, 2017. *Id.* at 53-4 (Exhibit B).  Defendant Serhan downgraded plaintiff's hearing diagnosis to "HL-30, Non-Significant."[3]  *Id.*   In a letter dated August 18, 2017, defendant ADA Coordinator Michael Washington indicated to plaintiff that, because his diagnosis was "HL-30, non-significant hearing loss[, plaintiff was] . . . appropriately housed" in Downstate C.F.[4]  *Id.* at 64 (Exhibit E).

Plaintiff was then scheduled for a transfer to Clinton C.F.  Compl. at 6.  Before being transferred, plaintiff's hearing aid was placed in a paper bag that had plaintiff's identifying information written on the outside.  *Id.*  Upon arrival at Clinton C.F., however, corrections officials told plaintiff the hearing aid was lost.  *Id.*

On July 9, 2018, plaintiff sent a letter complaining of "the denial of proper medical care and treatment while at Clinton C.F." to defendant Carl Koenigsmann, the DOCCS Chief

---

[2]  Plaintiff's complaint alleges that he was provided hearing aids during his confinement in Downstate C.F.  *See* Compl. at 6, ¶ 6.  Exhibit A to the complaint, however, reflects that plaintiff was provided a single hearing aid for his left ear while confined in Rikers Island.  *Id.* at 49-50.  Whether plaintiff was issued one or two hearing aids at Downstate C.F. or Rikers is not critical to the Court's analysis in this Decision and Order.

[3]  There are three levels of designation for hearing loss for inmates in DOCCS's custody, including (1) HL10 Hearing Loss/Deaf; (2) HL20 Hearing Loss/Hard of Hearing; and (3) HL30 Hearing Loss/Non-Significant. *See* Compl. at 53 (Exhibit B); DOCCS Directive 2612, Inmates With Sensorial Disabilities, https://doccs.ny.gov/system/files/documents/2020/11/2612.pdf (last visited Apr. 9, 2021).

[4]  Defendant Washington's letter alludes to a letter that plaintiff wrote on August 18, 2017.  *See* Compl. at 64 (Exhibit E).  The complaint does not include any allegations concerning the contents of that letter from plaintiff, nor do the exhibits attached to the complaint include a copy of the letter from plaintiff.

Medical Officer.  Compl. at 6; *see also id.* at 60-62 (Exhibit D).  More specifically, the letter

explained that, prior to his arrival at Downstate C.F., he had been diagnosed with significant

hearing loss and provided a hearing aid and that defendant Serhan's subsequent hearing

test rendered inaccurate results.  *Id.* at 60-61.  Plaintiff further explained that he felt at risk at

Clinton C.F. because he "can not [sic] hear the count annoucements [sic] over the P.A.

systems in the block or yard, no fire alarm in cell or in view and because [his] record is not

reflecting the hearing loss the C.O.'s are threatening to write [him] up[.]"  *Id.* at 61.

Shortly after he wrote that letter to defendant Koenigsmann, plaintiff was attacked by

another inmate on July 27, 2018.  Compl. at 7; *see id.* at 92 (Exhibit L).  Because plaintiff did

not have his hearing aid, he was not able to hear the inmate approaching before the attack.

Compl. at 7.  As Clinton C.F. officials attempted to de-escalate the incident, one of them

"slammed the plaintiff on the floor on his right ear and dragged him . . . causing more

damage to the plaintiff's hearing."  *Id.*  Medical staff at Clinton C.F. later told plaintiff "they

saw blood inside of the plaintiff's ear," gave him ear drops, and told him it was possible he

had a ruptured eardrum.  *Id.*

Plaintiff was thereafter transferred to Great Meadow C.F., where he was examined by

defendant Nurse Practitioner Susan Devlin-Varin and defendant Dr. Vonda Johnson.  Compl.

at 7.  Defendants Devlin-Varin and Johnson told plaintiff they saw blood in his ear.  *Id.*

Defendants Devlin-Varin and Johnson referred plaintiff to defendant Serhan, who again

designated plaintiff's hearing loss as HL30.  *Id.* at 8.

While plaintiff was confined in Great Meadow C.F., he complained about the lost

hearing aid, his hearing disability, and that he was not provided a sign over his cell door that

indicated to corrections staff that he was hard of hearing.  Compl. at 8.  Because plaintiff was not provided the sign, he was disciplined unnecessarily when he could not "hear the bell for facility and DOCCS count procedures." *Id.*  Defendant Great Meadow C.F. Correctional Officer E. Vedder knew that plaintiff had hearing loss but nevertheless "disciplined [him] for being deaf instead of helping." *Id.*

As relevant to the claims arising in this District, in addition to naming Michael Washington, Carl Koenigsmann, Susan Devlin-Varin, Vonda Johnson, E. Vedder, and John Serhan as defendants, the complaint also names (1) DOCCS; (2) CORC; (3) DOCCS Acting Commissioner Anthony Annucci; (4) Great Meadow C.F. Superintendent Jon Doe; (5) Great Meadow C.F. Inmate Grievance Supervisor; (6) Great Meadow C.F.; and (7) Clinton C.F. as defendants.  Compl. at 2-3.

Liberally construed, the complaint asserts Eighth Amendment deliberate medical indifference and First Amendment retaliation claims under 42 U.S.C. § 1983 ("Section 1983"); conspiracy and racial discrimination claims under Section 1983, 42 U.S.C. § 1981 ("Section 1981"),  42 U.S.C. § 1985 ("Section 1985"), and 42 U.S.C. § 1986 ("Section 1986"); and violations of the ADA, 42 U.S.C. § 12101 et seq., and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.  *See id.* at 9-31.

**C.  Analysis**

**1.  Claims Asserted Against Clinton C.F. and Great Meadow C.F.**

To state a cognizable civil rights claim under Section 1983, a complaint must allege, *inter alia*, that "some person has deprived [the plaintiff] of a federal right." *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005).  Correctional facilities, like Clinton C.F. and Great Meadow C.F.,

are not "persons" for purposes of Section 1983 and are therefore not amenable to suit. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 63 (1989); *Whitley v. Westchester Cnty. Corr. Facility Admin.*, No. 97-CV-0420, 1997 WL 659100, at *7 (S.D.N.Y. Oct. 22, 1997). Accordingly, any Section 1983 claims purportedly asserted against defendants Clinton C.F. and Great Meadow C.F. are dismissed for failure to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 2. **Great Meadow C.F. Inmate Grievance Supervisor**, **CORC, and Mallozzi**

Although the caption of plaintiff's complaint names the "Inmate Grievance Supervisor (Great Meadow Correctional Facility)" as a defendant, there are no allegations in the complaint implicating this unnamed individual.

On that basis alone, any claims asserted against this defendant are dismissed pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim upon which relief may be granted. *See Cipriani v. Buffardi*, No. 06-CV-0889, 2007 WL 607341, at *1 (N.D.N.Y. Feb. 20, 2007) (citing *Gonzalez v. City of N.Y.*, No. 97-CV-2246, 1998 WL 382055, at *2 (S.D.N.Y. Jul. 9, 1998)) ("Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff."); *see also Crown v. Wagenstein*, No. 96-CV-3895, 1998 WL 118169, at *2 (S.D.N.Y. Mar. 16, 1998) (dismissing claims asserted against the defendant-superintendent because the complaint "mention[ed him] only in the caption, and fail[ed] to allege any act or omission by [him]").

In addition, to the extent that plaintiff asserts claims arising from allegations that he is dissatisfied with the results of the inmate grievance procedures at Great Meadow C.F. and/or

the CORC's decision denying (in part) plaintiff's grievance, those claims are not cognizable.  Although prisoners undoubtedly retain a First Amendment right to meaningfully access the courts and petition the government for redress, *see, e.g., Bounds v. Smith*, 430 U.S. 817, 824 (1977), the Constitution does not mandate that prisoners be provided access to a grievance procedure during their incarceration.  *See Cancel v. Goord*, No. 00-CV-2042, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) (dismissing the amended complaint where the plaintiff alleged that the defendant "failed to process" his grievance because such allegations do not give rise to a constitutional claim).  Likewise, plaintiff has no constitutional right to a particular grievance outcome.  *See Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. Feb. 25, 2003) ("[The plaintiff] does not have a protected liberty interest in having his grievances investigated at the level of thoroughness that he desires, and therefore he [cannot] assert a due process claim as to such failures."); *see also Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 9 (1979) ("There is a crucial distinction between being deprived of a liberty one has. . . and being denied a . . . liberty that one desires.").  Accordingly, any claims concerning the grievance procedure at Great Meadow C.F. are dismissed pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### 3.  Retaliation

Plaintiff's complaint alleges that he was subjected to retaliatory transfers to different prison facilities as a result of grievances or complaints he filed.  *See, e.g.,* Compl. at 31-32.

To state a cognizable First Amendment retaliation claim, a plaintiff's complaint must plausibly allege "(1) that the speech or conduct at issue was protected, (2) that the defendant

took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004).(internal quotation marks omitted); *accord, Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009).

Courts must approach claims of retaliation "'with skepticism and particular care,' because 'virtually any adverse action taken against a prisoner by a prison official–even those otherwise not rising to the level of a constitutional violation–can be characterized as a constitutionally proscribed retaliatory act.'" *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (quoting *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001)).

With due regard to plaintiff's pro se status, plaintiff's retaliation claims must be dismissed.  Defendant DOCCS Commissioner Annucci and defendant Great Meadow C.F. Superintendent Jon Doe are both alleged to have transferred plaintiff to different prison facilities after plaintiff filed complaints or grievances, Compl. at 31-32, but there are no allegations that defendant Annucci received any complaints from plaintiff or that either defendant Annucci or defendant Jon Doe transferred plaintiff *because of* or were *motivated by* plaintiff's complaints when deciding to transfer him (assuming that defendants Annucci and Jon Doe were, in fact, responsible for the transfers).

In short, the complaint fails to allege a causal connection between plaintiff's grievances and the defendants' decision to transfer him to a different prison.   Accordingly, plaintiff's retaliation claims are dismissed pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### 4. __Deliberate Medical Indifference__

Liberally construed, plaintiff's complaint asserts Eighth Amendment deliberate medical indifference claims against defendants Washington, Koenigsmann, Devlin-Varin, Johnson, Vedder, and Serhan stemming from the loss of plaintiff's hearing aid and the failure to designate him hard of hearing at Clinton C.F. and Great Meadow C.F.

The Eighth Amendment's prohibition against cruel and unusual punishment establishes "the government's obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). A claim alleging that prison officials have violated this constitutional right must satisfy both objective and subjective requirements. *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996); *accord, Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011).

To satisfy the objective requirement, the alleged deprivation must be "sufficiently serious." *Hathaway*, 99 F.3d at 553; *see also Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) ("[T]he objective test asks whether the inadequacy in medical care is sufficiently serious."). Factors informing this inquiry include "whether a reasonable doctor or patient would find it important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain." *Salahuddin*, 467 F.3d at 280 (internal quotation marks and alterations omitted). Determining whether a deprivation is sufficiently serious requires a court to examine the seriousness of the deprivation, and specifically whether the deprivation represents "a condition of urgency, one that may produce death, degeneration, or extreme pain[.]" *Hill*, 657 F.3d at 122 (internal quotation marks omitted). Importantly, it is "the particular risk of harm faced by a prisoner

due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for Eighth Amendment purposes." *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003).

To satisfy the subjective requirement "[i]n medical-treatment cases . . ., the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." *Salahuddin*, 467 F.3d at 280.  "Deliberate indifference," in a constitutional sense, "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Id.*; *see also Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see e.g. Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185,191 (2d Cir. 2008), the Court finds that plaintiff's Eighth Amendment deliberate medical indifference claims asserted against defendants Koenigsmann, Devlin-Varin, Johnson, and Serhan survive sua sponte review and require a response.  In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

The Court reaches a different conclusion, however, with respect to plaintiff's claims asserted against defendants Washington and Vedder.  Defendant Washington is alleged to have written plaintiff in response to a grievance that plaintiff filed on or about August 18, 2017.  Compl. at 20; *see id.* at 64 (Exhibit E).  Defendant Washington reiterated the results of plaintiff's hearing test, which indicated "non-significant hearing loss." *Id.*  With due regard to

13

plaintiff's pro se status, those allegations do not give rise to a constitutional claim.  There are no allegations suggesting that defendant Washington had any reason to believe that plaintiff's health or safety was at risk at the time he wrote the letter to plaintiff.  Without more, the complaint fails to allege sufficient facts to satisfy the subjective element of a deliberate medical indifference claim.

As for the claims asserted against defendant Vedder, as a corrections officer and non-medical personnel, he engages in deliberate indifference where he "intentionally delay[s] access to medical care" while knowing that an "inmate [is] in extreme pain" or when he denies an inmate medical care altogether.  *Hodge v. Coughlin*, No. 92-CV-0622, 1994 WL 519902, at *11 (S.D.N.Y. Sept. 22, 1994), *aff'd*, 52 F.3d 310 (2d Cir. 1995); *see also Estelle*, 429 U.S. at 104-05 (noting that deliberate indifference can be manifested by "prison guards in intentionally denying or delaying access to medical care").

The complaint in this case does not allege that plaintiff requested medical care from defendant Vedder, or that defendant Vedder delayed or denied plaintiff medical assistance. The only allegations against defendant Vedder are that he knew that plaintiff had a hearing disability but nevertheless issued him a disciplinary ticket when plaintiff did not respond to defendant Vedder's orders.  These allegations are not sufficient to give rise to a deliberate medical indifference claim.

Accordingly, although the Court finds that the complaint has alleged sufficient facts to require a response from defendants Koenigsmann, Devlin-Varin, Johnson, and Serhan regarding plaintiff's deliberate medical indifference claims, the Eighth Amendment claims asserted against defendants Washington and Vedder are dismissed pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim upon which relief may be

14

granted.

### 5.  Conspiracy and Racial Discrimination Claims

Plaintiff's complaint asserts conspiracy and racial discrimination claims against the defendants arising under Sections 1981, 1983, 1985, and 1986.  Compl. at 11-16.

To state a claim under Section 1981, a complaint must allege that the defendants were "racially motivated and purposefully discriminatory."  *General Building Contractors Assoc. v. Pennsylvania*, 458 U.S. 375, 386 (1982).  "Under § 1981, the events of the intentional and purposeful discrimination, as well as the racial animus constituting the motivating factor for the defendant's actions must be specifically pleaded in the complaint to withstand dismissal under Rule 12(b)(6)."  *Yusuf v. Vassar College*, 827 F.Supp. 952, 955 (S.D.N.Y.1993), *aff'd in part and rev'd in part*, 35 F.3d 709 (2d Cir. 1994).

Plaintiff alleges that he has "dark skin and complexion," but he otherwise fails to identify his race, and, furthermore, he fails to allege that any of defendants' behavior was motivated by plaintiff's "dark skin."  Accordingly, plaintiff's Section 1981 claims are dismissed pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim upon which relief may be granted.

As for plaintiff's conspiracy claims, under Section 1983, a complaint must allege that (1) an agreement existed between two or more state actors to act in concert to inflict an unconstitutional injury on plaintiff and (2) an overt act was committed in furtherance of that goal.  *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002).  To state a cognizable conspiracy claim arising under Section 1985(3), a complaint must allege facts plausibly suggesting that the defendants "(1) engaged in a conspiracy; (2) for the purpose of

15

depriving, either directly or indirectly, any person or class of persons the equal protection of the laws. . .; (3) acted in furtherance of the conspiracy; and (4) deprived such person or class of persons the exercise of any right or privilege of a citizen of the United States." *N.Y.S. Nat'l Organization for Women v. Terry*, 886 F.2d 1339, 1358 (2d Cir. 1989); *accord, Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

"Furthermore, the conspiracy must also be motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.'" *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993) (quoting *United Bhd. of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 82-29 (1983)).  For purposes of Section 1985, a conspiracy is an agreement between two or more people, where one person acts in furtherance of the objective of the conspiracy, and each person "has knowledge of the nature and scope of the agreement." *Morpurgo v. Inc. Vill. of Sag Harbor*, 697 F. Supp. 2d 309, 339 (E.D.N.Y. 2010) (internal quotation marks omitted).

Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed.  *Ciambriello*, 292 F.3d at 325; *see also Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir. 1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.").  To state a conspiracy claim, plaintiff "must provide some factual basis supporting a meeting of the minds." *See Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003).

Thus, plaintiff must "make an effort to provide some details of time and place and the alleged effects of the conspiracy . . . [including] facts to demonstrate that the defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Warren v. Fischl*,

33 F. Supp. 2d 171, 177 (E.D.N.Y. 1999) (citations omitted).

With due regard to plaintiff's pro se status, his Section 1983 and 1985 conspiracy claims must be dismissed, as well.  The complaint alleges that defendants continued to refer plaintiff to the same audiologist (defendant Serhan) because they knew that he would diagnose plaintiff with HL30 non-significant hearing loss.  Compl. at 11.

The complaint fails, however, to plausibly allege any facts that support an inference that "defendant(s)" (as a collective group) arrived at a singular agreement, or "meeting of the minds," that was aimed at denying plaintiff adequate assistance for his hearing disability. *See id.* (alleging that "[t]he defendant(s)[] took the plaintiff to the same doctor, knowing that such doctor (Defendant John Serhan) would say that the plaintiff's hearing is HL30, and knew that such doctor mis-diagnosed the plaintiff").  Accordingly, plaintiff's Section 1983 and 1985 conspiracy claims are dismissed pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim upon which relief may be granted.

Lastly, "liability under [Section] 1986 is conditioned upon a conspiracy outlawed by [Section] 1985." *Moriani v. Hunter*, 462 F. Supp. 353, 357 (S.D.N.Y. 1978).  Accordingly, because, as discussed above, plaintiff's complaint fails to allege a cognizable Section 1985 claim, plaintiff's Section 1986 claims also must fail and are dismissed pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### 6. ADA and Rehabilitation Act Claims

Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see e.g. Sealed Plaintiff*, 537 F.3d at 191, the Court finds that plaintiff's

17

ADA and Rehabilitation Act claims asserted against defendants DOCCS, Serhan, Washington, and Jon Doe survive sua sponte review and require a response.  In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

Because plaintiff's ADA and Rehabilitation Act claims are asserted against the Superintendent of Great Meadow C.F., whose name is not known to plaintiff, service of process cannot be effected on that individual unless and until he has been identified by name.  If plaintiff wishes to pursue his claims against defendant Jon Doe, he must take reasonable steps to ascertain through discovery the identity of that individual.[5]  Upon learning the identity of the unnamed defendant, plaintiff must amend the operative complaint to properly name that person as a party.  If plaintiff fails to ascertain the identity of the Jon Doe defendant so as to permit timely service of process, all claims against that individual will be dismissed.[6]

## IV.  CONCLUSION

Therefore, it is

ORDERED that

1.  The Clerk shall revise the docket to reflect that John Serhan, Michael Washington, Shelley M. Mallozzi, DOCCS, CORC, and Inmate Grievance Supervisor are defendants in

---

[5]  As discussed more completely below, plaintiff's Fourteenth Amendment conditions of confinement claims asserted against defendants St. Andrews and Williams also survive initial review.  Although those claims are separate and apart from plaintiff's excessive force and failure to intervene claims asserted against defendants John Does 1-9, defendants St. Andrews and Williams are requested to respond to reasonable discovery demands from plaintiff that are aimed at identifying the John Doe defendants.

[6]  Rule 4 of the Federal Rules of Civil Procedure require that a party be served within 90 days of issuance of the summons, absent a court order extending that period.  Fed. R. Civ. P. 4(m).  The Court's local rules shorten the time for service from 90 days under Rule 4(m) to 60 days.  N.D.N.Y. L.R. 4.1(b).

this action against whom plaintiff's complaint asserts claims arising in this District;

2.  Plaintiff's complaint (Dkt. No. 1) is **ACCEPTED for filing** only to the extent that it asserts (1) Eighth Amendment deliberate medical indifference claims against defendants Koenigsmann, Devlin-Varin, Johnson, and Serhan; and (2) ADA and Rehabilitation Act claims against defendant DOCCS, Jon Doe, Michael Washington, and John Serhan;

3.  Except as to the foregoing, the claims asserted in the complaint are **DISMISSED without prejudice**[7] pursuant to 28 U.S.C. § 1915 and 28 U.S.C. § 1915A for failure to state a claim upon which relief may be granted;

4.  Plaintiff shall take reasonable steps through discovery to ascertain the identity of defendant Great Meadow C.F. Superintendent Jon Doe, against whom plaintiff's ADA and Rehabilitation Act claims are asserted.  **Plaintiff's failure to timely serve that defendant will result in dismissal** of the claims asserted against him and termination of that defendant from the action;

5.  In light of the length of plaintiff's complaint and attached exhibits, in order to effectuate service of process on defendants, **plaintiff shall provide the Court with six complete copies of the complaint, along with the attached exhibits**, **within 30 days of the date of this Decision and Order**;[8]

---

[7]  Should plaintiff seek to pursue any of the claims dismissed without prejudice, he must file an amended complaint.  Any amended complaint, which shall supersede and replace the original complaint in its entirety, must allege claims of misconduct or wrongdoing against each named defendant that plaintiff has a legal right to pursue, and over which jurisdiction may properly be exercised.  Any amended complaint filed by plaintiff must also comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure.

[8]  Although plaintiff is proceeding IFP in this action, he is nevertheless responsible for any costs incurred, including copying fees.  Plaintiff's complaint is 36 pages in length, and he has attached 62 pages of exhibits.  The copying fee in this District is $0.50 per page.  If plaintiff does not wish to provide the Court with six complete copies of the complaint and exhibits, he may alternatively pay the Court's copying fee by mailing a certified check in the amount of $49.00 within 30 days of the date of this Decision and Order.  Upon receipt, the Clerk shall make the necessary copies to effectuate service on the defendants.

6.  Upon receipt of the copies of the complaint and exhibits as directed above, the Clerk shall issue summonses and forward them, along with copies of the complaint and exhibits, to the United States Marshal Service for service of process upon defendants Koenigsmann, Devlin-Varin, Johnson, Serhan, DOCCS, and Washington.  The Clerk shall forward a copy of the summonses and complaint and exhibits by mail to the Office of the New York State Attorney General, together with a copy of this Decision and Order;

7.  A response to the complaint shall be filed by defendants Koenigsmann, Devlin-Varin, Johnson, Serhan, DOCCS, Jon Doe, Michael Washington, and John Serhan or their counsel as provided for in the Federal Rules of Civil Procedure;

8.  The Clerk shall **TERMINATE** from the docket defendants Annucci, Vedder, Great Meadow C.F., Clinton C.F., CORC, and Shelley Mallozzi;

9.  All pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261;

10.  Plaintiff must comply with requests by the Clerk's Office for any documents that are necessary to maintain this action;

11.  All parties must comply with the Local Rules of Practice for the Northern District of New York in filing motions; motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court;

12.  **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so may**

**result in the dismissal of this action**; and

      13.  The Clerk shall serve a copy of this Decision and Order on plaintiff.

      IT IS SO ORDERED.


Dated:  April 13, 2021
       Utica, New York.

United States District Judge