UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JAMES BELLAMY,

                                           Plaintiff,            9:21-CV-0251
                                                                     (DNH/TWD)

    v.

DR. CARL KOENIGSMANN, et al.,

                                           Defendants.
_____

APPEARANCES:

JAMES BELLAMY
17-A-2901
Plaintiff, pro se
Attica Correctional Facility
Box 149
Attica, NY 14011

DAVID N. HURD
United States District Judge

# DECISION AND ORDER

## I. INTRODUCTION

On or about July 31, 2020, pro se plaintiff James Bellamy ("Bellamy" or "plaintiff"), an inmate currently in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), commenced this action in the Western District of New York ("WDNY"). Dkt. No. 1 ("Compl."). At the time plaintiff filed his complaint, he also applied to proceed in the action in forma pauperis ("IFP"). Dkt. Nos. 2, 7.

On March 3, 2021, WDNY District Judge Charles Siragusa issued a Decision and Order granting plaintiff's IFP application and reviewing the sufficiency of plaintiff's complaint pursuant to 28 U.S.C. § 1915 ("Section 1915") and 28 U.S.C. § 1915A ("Section 1915A").

Dkt. No. 11 ("WDNY Order"). As relevant here, the WDNY Order severed and transferred to this District all of plaintiff's claims arising out of Clinton Correctional Facility ("Clinton C.F.") and Great Meadow Correctional Facility ("Great Meadow C.F.") because those prisons are located in this District.[1] WDNY Order at 9-10, 15, 17.

Because the WDNY Order did not analyze the sufficiency of the claims arising in this District, this Court conducted a review of the complaint upon receipt of the action in this District. On April 14, 2021, the Court issued a Decision and Order accepting plaintiff's complaint to the extent that it asserted (1) Eighth Amendment deliberate medical indifference claims pursuant to 42 U.S.C. § 1983 ("Section 1983") against defendants Dr. Carl Koenigsmann, Nurse Practitioner Susan Devlin-Varin, Dr. Vonda Johnson, and Clinton C.F. Audiologist John Serhan; and (2) violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 et seq., and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, asserted against defendants DOCCS, Great Meadow C.F. Jon Doe, Great Meadow C.F. ADA Coordinator Michael Washington, and Serhan. Dkt. No. 13 ("April Order") at 19.

Because of the length of Bellamy's complaint and the volume of exhibits attached to the complaint, at the conclusion of the April Order, the Court directed plaintiff submit six complete copies of the complaint and attached exhibits for purposes of serving the six named defendants against whom plaintiff's surviving claims were asserted. April Order at 19. In an apparent attempt to comply with that Order, the Court received six copies of an

---

[1] The WDNY Order also transferred those claims arising at Downstate Correctional Facility ("Downstate C.F.") to the Southern District of New York ("SDNY"). WDNY Order at 17.

2

amended complaint from plaintiff.[2]  Dkt. No. 14 (cover letter); Dkt. No. 15 ("Am. Compl.").

The Clerk has now forwarded plaintiff's amended complaint to the Court for review.

## II. PLAINTIFF'S AMENDED COMPLAINT

### A. Governing Legal Standard

The legal standard governing the review of a pro se inmate-plaintiff's complaint pursuant to Sections 1915 and 1915A was discussed at length in the April Order and will not be restated in this Decision and Order.  April Order at 3-5.

### B. Summary of the Amended Complaint

#### 1. The Defendants

Like plaintiff's original complaint, the amended complaint does not clearly identify the defendants.  The caption of the amended complaint, as well as the section of the amended complaint asking for the identities of the "parties in volved [sic]" in the action, names the following individuals: (1) DOCCS Commissioner Anthony J. Annucci; (2) DOCCS Chief Medical Officer Dr. Carl Koenigsmann; (3) DOCCS Regional Medical Director Dr. Hentschel; (4) Great Meadow C.F. Correctional Officer E. Vedder; (5) Great Meadow C.F. Superintendent John Doe; (6) Clinton C.F. Nurse Practitioner Susan Devlin-Varin; and (7) Clinton C.F. Dr. Vonda Johnson.  See Am. Compl. at 1.

Upon review of the entire amended complaint, however, it appears clear that the pleading continues to assert certain claims that survived the Court's initial review of the original complaint against other defendants, as well, including DOCCS, Serhan, Washington,

---

[2] When plaintiff filed his amended complaint (and the additional copies), he did not provide the Court with the requested copies of the exhibits attached to his original complaint.  The Clerk is respectfully directed to attach the exhibits included with plaintiff's original complaint (Compl. at 42-98), to the amended complaint.

3

and Shelley Mallozzi (a member of the Central Office Review Committee ("CORC")). Accordingly, in light of plaintiff's pro se status, the Court has construed the amended complaint to name DOCCS, Serhan, Washington, and Mallozzi as defendants, in addition to those listed in the caption of the amended pleading.

## 2. **Summary of the Facts**

The facts set forth in the amended complaint are virtually the same as those offered in the original complaint. Because those facts were previously summarized in the April Order, *see* April Order at 5-8, the Court will only briefly highlight below the allegations supporting the claims arising in this District.

After being confined in Rikers Island Correctional Facility, where he was diagnosed with a "serious" hearing loss, plaintiff was transferred to Downstate C.F. on or about August 14, 2017. Am. Compl. at 4. On August 16, 2017, defendant Serhan performed a hearing test on plaintiff and "relisted [him] as HL30."[3] *Id.* at 4-5. Officials at Downstate C.F. provided plaintiff with a hearing aid. *Id.* at 5.

When plaintiff was transferred from Downstate C.F. to Clinton C.F., prison officials lost his hearing aid. Am. Compl. at 5-6. While in Clinton C.F., defendant Serhan re-tested plaintiff's hearing loss, and again listed him as HL30. *Id.* at 6. Plaintiff did not receive a replacement hearing aid. *Id.* at 16-17.

On an unidentified date, plaintiff was assaulted by another prisoner during recreation at Clinton C.F. Am. Compl. at 6. Plaintiff did not hear the prisoner "sneak up" on him

---

[3] As explained in the April Order, there are three levels of designation for hearing loss for inmates in DOCCS's custody, including (1) HL10 Hearing Loss/Deaf; (2) HL20 Hearing Loss/Hard of Hearing; and (3) HL30 Hearing Loss/Non-Significant. *See* Compl. at 53 (Exhibit B); DOCCS Directive 2612, Inmates With Sensorial Disabilities, https://doccs.ny.gov/system/files/documents/2020/11/2612.pdf (last visited June 28, 2021).

4

because of his hearing loss and because he did not have a hearing aid. *Id.* at 6, 16. When prison officials intervened during the assault, they "slammed [plaintiff] on the floor on his right ear," causing more damage to his hearing. *Id.* at 6. Defendants Devlin-Varin and Johnson examined plaintiff after the assault and told plaintiff "they saw blood in [his] ear." *Id.*

Plaintiff was transferred again to Great Meadow C.F. Am. Compl. at 6. Although he complained about his hearing designation and the lost hearing aid, plaintiff was not provided with a sign over his cell door indicating that he is hard of hearing. *Id.* Because of this, plaintiff was disciplined by corrections officials for not responding to bells issued at the facility. *Id.* In particular, defendant Vedder issued plaintiff a misbehavior report on September 23, 2018, because plaintiff allegedly slept through the bell for count. *Id.* at 7; *see also* Compl. at 66 (Exhibit F).

Plaintiff appealed his grievance concerning, inter alia, his hearing aid and treatment for his hearing loss to CORC. Compl. at 77 (Exhibit I). Defendant Mallozzi "electronically signed" CORC's response, which effectively denied plaintiff's requests for further testing and hearing aids. Am. Compl. at 7; *see also* Compl. at 77 (Exhibit I).

Like the original complaint, the amended complaint asserts Eighth Amendment deliberate medical indifference and First Amendment retaliation claims pursuant to Section 1983; racial discrimination and conspiracy claims pursuant to 42 U.S.C. § 1981 ("Section 1981"), 42 U.S.C. § 1985 ("Section 1985"), and 42 U.S.C. § 1986 ("Section 1986"); and violations of the ADA. Am. Compl. at 7-31. For a complete statement of plaintiff's claims, reference is made to the amended complaint.

5

### C. Analysis

### 1. Claims That Survived the April Order

As discussed above, following its review of the original complaint, the Court decided that defendants Koenigsmann, Devlin-Varin, Johnson, and Serhan were required to respond to plaintiff's Eighth Amendment deliberate medical indifference claims, and that defendants DOCCS, Serhan, and Washington were required to respond to plaintiff's ADA and Rehabilitation Act claims.[4]  *See* April Order at 13, 17-18, 19.

Having carefully reviewed plaintiff's amended complaint, and mindful of its obligation to liberally construe a pro se litigant's pleadings, the Court finds that defendants Koenigsmann, Devlin-Varin, Johnson, and Serhan are required to respond to plaintiff's Eighth Amendment deliberate medical indifference claims as set forth in the amended complaint, and that defendants DOCCS, Serhan, and Washington are required to respond to plaintiff's ADA claims.[5]

Plaintiff's ADA claims asserted in the amended complaint against defendant Great Meadow C.F. John Doe also survive initial review, and plaintiff is again directed to take reasonable steps to ascertain through discovery the identity of that individual. Upon learning defendant John Doe's identity, plaintiff shall amend the operative pleading to properly name him as a party. Failure to ascertain the identity of the John Doe so as to permit timely service of process will result in the dismissal of all claims asserted against that individual.

---

[4] Plaintiff's ADA and Rehabilitation Act claims asserted against defendant Great Meadow C.F. Superintendent John Doe also survived initial review, and plaintiff was directed to ascertain his identity during discovery. April Order at 18.

[5] Unlike the original complaint, the amended complaint makes no reference to or asserts any claims under the Rehabilitation Act. Accordingly, the Court deems those claims abandoned.

### 2. Remaining Claims

#### a. Claims Asserted Against Defendant Mallozzi

With respect to any purported claims asserted against defendant Mallozzi, as explained in the April Order, any claim arising out of allegations that plaintiff is not satisfied with the results of his appeal to the CORC are not cognizable under Section 1983 because prisoners have no constitutionally protected right to a particular grievance outcome. *See* April Order at 10.

#### b. Claims Asserted Against Defendant Vedder

As for plaintiff's claims against defendant Vedder, the amended complaint alleges only that, despite his awareness of plaintiff's hearing deficits, defendant Vedder nevertheless issued plaintiff a misbehavior report after he slept through the bell for "count" on September 23, 2018, at Great Meadow C.F. Am. Compl. at 7. For the same reasons as articulated in the April Order, any Eighth Amendment deliberate medical indifference claim asserted against defendant Vedder based on these allegations must be dismissed.[6]

More specifically, in the April Order, the Court explained as follows:

> [A]s a corrections officer and non-medical personnel, [defendant Vedder] engages in deliberate indifference where he 'intentionally delay[s] access to medical care' while knowing that an 'inmate [is] in extreme pain' or when he denies an inmate medical care altogether. *Hodge v. Coughlin*, No. 92-CV-0622, 1994 WL 519902, at *11 (S.D.N.Y. Sept. 22, 1994), *aff'd*, 52 F.3d 310 (2d Cir. 1995); *see also Estelle*, 429 U.S. at 104-05 (noting that deliberate indifference can be manifested by 'prison guards in intentionally denying or delaying access to medical care').

---

[6] The legal standard governing Eighth Amendment deliberate medical indifference claims was set forth in the April Order and will not be restated in this Decision and Order. *See* April Order at 12-13.

7

> The complaint in this case does not allege that plaintiff requested medical care from defendant Vedder, or that defendant Vedder delayed or denied plaintiff medical assistance. The only allegations against defendant Vedder are that he knew that plaintiff had a hearing disability but nevertheless issued him a disciplinary ticket when plaintiff did not respond to defendant Vedder's orders. These allegations are not sufficient to give rise to a deliberate medical indifference claim.

April Order at 14. Because plaintiff's amended complaint offers no new allegations in support of his claims against defendant Vedder, those claims are dismissed pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### c. Claims Arising Under Sections 1981, 1985, and 1986

Turning to plaintiff's racial discrimination claim asserted pursuant to Section 1981, the legal standard governing that claim was set forth in the April Order and will not be restated in this Decision and Order. April Order at 15. Based on the allegations in the amended complaint, it seems that plaintiff confuses racial discrimination with disability discrimination. *See* Am. Compl. at 10 ("Racial discrimination also apart [sic] of discriminating against a person(s) handi cap [sic] abilities.").

Plaintiff's disability discrimination claims are governed by the ADA. With respect to any racial discrimination claims under Section 1981, however, like plaintiff's original complaint, the amended complaint alleges only that defendants "discriminated against . . . Plaintiff [who is] of dark skin and complexion" by refusing to send him to a different audiologist than defendant Serhan. Am. Compl. at 11. None of the allegations in the amended complaint identify plaintiff's race, and, moreover, the allegations offered in the amended complaint are conclusory and vague. Indeed, none of the specific defendants

8

named in the amended complaint are implicated in any racial discrimination.

As for plaintiff's conspiracy claims asserted under Sections 1985 and 1986, the legal standards governing those claims were set forth in the April Order and will not be restated in this Decision and Order. *See* April Order at 15-17. Like the original complaint, the amended complaint fails to plausibly allege that defendants arrived at singular agreement or "meeting of the minds" that was aimed at discriminating against plaintiff for any reason.

For the foregoing reasons, plaintiff's claims asserted under Sections 1981, 1985, and 1986 are dismissed pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### d. **Claims Asserted Against Defendant Annucci**

Like the original complaint, the amended complaint alleges that defendant Annucci transferred plaintiff to a different prison facility in retaliation for the grievances plaintiff filed regarding the care he was receiving for his hearing loss. Am. Compl. at 30.

The legal standard governing First Amendment retaliation claims was set forth in the April Order and will not be restated in this Decision and Order. *See* April Order at 10-11. Plaintiff's amended complaint fails to allege a causal connection between any of the grievances or complaints plaintiff filed and the decision to transfer him to different a different prison. Plaintiff does not even allege that defendant Annucci is the individual that specifically decided to transfer plaintiff to a different facility.

Even if he did, there are no allegations in the amended complaint that defendant Annucci received the grievances or complaints or that he was specifically motivated by the grievances or complaints in deciding to transfer plaintiff. Because the amended complaint fails to plausibly allege a causal connection between his grievances and his transfer to a

9

different prison facility, his First Amendment retaliation claims are dismissed pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### e. Claims Arising in Downstate C.F. and Attica C.F.

Plaintiff's amended complaint include the allegations concerning the conduct of some individuals working in Downstate C.F. For example, plaintiff alleges that, upon his arrival in Downstate C.F., Dr. Mario Malvarosa reviewed plaintiff's medical records that had been generated at Rikers Island and "conspired to have the plaintiff's hearing levels changed." Am. Compl. at 28. Plaintiff accuses Dr. John Bendheim of similar conduct. *Id.*

All of plaintiff's claims arising out of incidents that occurred or treatment plaintiff received while he was confined in Downstate C.F. were transferred to the SDNY pursuant to the WDNY Order. To the extent plaintiff wishes to pursue those claims, he shall do so in the SDNY.

Similarly, plaintiff's amended complaint includes allegations concerning his care and treatment during his confinement in Attica C.F. *See, e.g.,* Am. Compl. at 31. If plaintiff wishes to pursue those claims, he must do so in the WDNY.

## III. CONCLUSION

Therefore, it is

ORDERED that

1. The amended complaint (Dkt. No. 15) is **ACCEPTED for filing** only to the extent that it asserts (1) Eighth Amendment deliberate medical indifference claims against defendants Koenigsmann, Devlin-Varin, Johnson, and Serhan; and (2) ADA claims against defendant DOCCS, John Doe, Washington, and Serhan;

10

2. Except as to the foregoing, the claims asserted in the amended complaint arising out of plaintiff's confinement in Clinton Correctional Facility and Great Meadow Correctional Facility are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted;

3. Plaintiff shall take reasonable steps through discovery to ascertain the identity of defendant Great Meadow Correctional Facility Superintendent John Doe, against whom one of plaintiff's ADA claims as asserted. **Plaintiff's failure to timely serve that defendant will result in dismissal** of the claim asserted against that individual and termination of that defendant from the action;

4. In light of plaintiff's pro se status, the Clerk of the Court shall docket, as an attachment to the amended complaint, those exhibits that are attached to his original complaint (Dkt. No. 1 at 42-98);

5. The Clerk of the Court shall issue summonses for defendants Koenigsmann, Devlin-Varin, Johnson, Serhan, DOCCS, and Washington, and forward them, along with copies of the amended complaint (without exhibits, as provided by plaintiff) and a copy of the April Order (Dkt. No. 13) and this Decision and Order to the United States Marshal Service for service of process on those defendants. The Clerk shall forward a courtesy copy of the amended complaint, the April Order, and this Decision and Order to the Office of the New York State Attorney General;

6. In light of plaintiff's pro se status, defendants Koenisgmann, Devlin-Varin, Johnson, Serhan, DOCCS, and Washington are **DIRECTED** to access the exhibits to the amended complaint electronically via the Court's Electronic Court Management/Case Filing system and the Clerk shall make any necessary arrangements for defendants to do so at no extra cost;

and

      7.  The Clerk shall serve a copy of this Decision and Order on plaintiff by regular mail.

      IT IS SO ORDERED.


Dated: July 1, 2021
       Utica, New York.

_____
United States District Judge